

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUN 16 2014
U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| THALES VISIONIX, INC., | |
| Plaintiff, | |
| v. | Case No. 14-___ C |
| THE UNITED STATES OF AMERICA, | Judge _____ |
| Defendant. | 14- 513C |

## COMPLAINT

Thales Visionix, Inc. ("TVI") brings this action under 28 U.S.C. § 1498 to recover its reasonable and entire compensation for the use or manufacture, by or for the United States, without license or lawful right, of the invention described in and covered by U.S. Patent No. 6,474,159 ("the '159 patent"). A true and correct copy of the '159 patent is attached as Exhibit A.

In support of this action, Plaintiff avers as follows.

## PARTIES

1. The Plaintiff is TVI, a corporation organized and existing under the laws of the State of Maryland, with places of business at 700 Technology Park Drive, Billerica, Massachusetts and 1444 North Farnsworth Ave., Aurora, Illinois. TVI is a wholly owned subsidiary of Thales Defense & Security, Inc. TVI designs, develops, and delivers helmet-mounted display and motion-tracking technology for defense and aerospace applications to customers worldwide.

2. The Defendant is the United States of America, acting through its various agencies (including, but not limited to, the Department of Defense and the Departments of the Navy, Air Force, and Army).

## SUBJECT MATTER JURISDICTION

3. This is an action under 28 U.S.C. § 1498, which provides, in relevant part, as follows:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's sole remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture . . . .
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor . . . for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a).

## FACTUAL BACKGROUND

### A. Helmet-Mounted Display Systems

4. This case involves technology critical to the success of the F-35 Joint Strike Fighter ("F-35"). The F-35 has been touted as the first tactical fighter jet in the last fifty years to fly without a heads-up display system, that is, a system that displays tactical information on a transparent surface inside the cockpit and within the pilot's forward line of sight. One disadvantage of a heads-up display system is that the pilot must be looking straight ahead at the display to read tactical information and to target and fire at enemy aircraft or other targets.

5. Instead of a heads-up display, the F-35 uses a revolutionary helmet-mounted display system ("HMDS"). The F-35 HMDS projects information on the interior of the visor of the pilot's helmet. This means that the pilot does not have to be looking directly at a fixed point in space to be able to see tactical information. It also means that the pilot can target and fire weapons in directions other than straight ahead. The HMDS thus gives the pilot unprecedented

real-time situational awareness and an enhanced ability to target and fire at enemy aircraft and other targets.

6. One technical challenge in designing an HMDS is that when the pilot turns his head and, with it, his helmet, the displayed information must be updated to correlate to the new direction the pilot is looking. Thus, the orientation of the helmet with reference to the aircraft must be continuously tracked so that when the orientation changes the correct information for the new orientation can be displayed.

7. For such a system to operate satisfactorily, it is necessary to ensure that the updating of visual data when the pilot turns his head occurs as close to instantaneously as possible. Even a small interval between helmet rotation and presentation of visual data, called latency, can cause a mismatch between the data being presented to the pilot and the data the pilot's brain is expecting. This mismatch can cause pilot disorientation and nausea. Even latencies as small as five milliseconds can induce these adverse effects.

8. Latency has negative consequences beyond adverse physiological impacts. For example, there cannot be any latency in the display of landing symbology when the aircraft is approaching an aircraft carrier in poor weather. Latency will also negatively impact accuracy of aiming symbology when firing the aircraft's weapons.

9. There is thus a need to synchronize changes in helmet orientation relative to the aircraft with display of updated data, and so to reduce latency, as much as possible. The challenges of reducing latency are especially acute when the frame of reference is itself moving as is the case when one is trying to track the orientation of the helmet relative to an aircraft in flight.

10. The F-35 HMDS is critical to the success of the F-35 program. F-35 test pilots are expected to begin flying this year with a third-generation HMDS that incorporates modifications to the earlier-generation display system, which the Pentagon had identified as an F-35 program risk.

**B.  The '159 Patent**

11. The '159 patent, titled "Motion-Tracking," was duly issued by the U.S. Patent and Trademark Office on November 5, 2002. TVI owns the '159 patent by assignment.

12. The '159 patent describes prior use of inertial tracking of objects for head mounted displays offering low jitter, fast response, increased range, and reduced problems due to interference or line-of-sight occlusion. These characteristics earned such inertial trackers widespread acceptance as a high-performance, robust, and cost-effective alternatives to magnetic, optical, and acoustic tracking systems. These inertial sensors, however, were designed to measure head motion relative to a reference frame that is stationary relative to the ground. They would not be useful for measuring head motion relative to a reference frame that is moving relative to the ground. The '159 patent describes and claims systems for using inertial trackers to track motion relative to a moving platform instead of relative to the earth. This makes these systems useful in meeting the operational requirements of the F-35 HMDS.

13. In particular, the '159 patent claims, among other things, a system with two inertial sensors, one mounted on the tracked object (for example, the helmet), and the other mounted on the moving reference frame (for example, the aircraft). The system determines the orientation of the tracked object relative to the moving reference frame, which information can be used, for example, to synchronize a helmet-mounted display with changes in the helmet orientation.

14. Thus, the technology of the '159 patent permits rapid tracking of the orientation of an object with respect to a moving frame of reference. It is also less susceptible to magnetic or metallic interference within the aircraft, and requires less equipment within the aircraft's cockpit.

### C. Use By or for the Government

15. On information and belief, Lockheed Martin Corporation ("Lockheed Martin") is the prime contractor to the Government for the F-35.

16. On information and belief, Lockheed Martin supplies the Government with F-35 aircraft which include the F-35 HMDS.

17. On information and belief, Lockheed Martin obtains the F-35 HMDS and/or components for the F-35 HMDS, including helmets, from Rockwell Collins ESA Vision Systems LLC ("Vision Systems").

18. On information and belief, Vision Systems is a joint venture of Rockwell Collins and Elbit Systems of America LLC.

19. On information and belief, the HMDS for the F-35 uses two inertial sensors, one mounted in the helmet supplied by Vision Systems, and the other in the F-35, as described and claimed in the '159 patent.

20. On information and belief, Lockheed Martin installs the Vision Systems HMDS in the F-35 to make a system that infringes the '159 patent.

21. On information and belief, Lockheed Martin delivers the combined system to the Government, which then also infringes the '159 patent.

22. Lockheed Martin's decision to incorporate the technology of the '159 patent into the F-35 afforded it major advantages. Specifically, the F-35's HDMS, a critical technology for the F-35, is more robust and exhibits lower latency than previous generations of HMDS's.

23. The technology of the '159 patent has permitted and continues to permit Lockheed Martin to surmount one of the most daunting technical hurdles to the successful realization of the F-35.

## COUNT I
(Use or Manufacture by the
United States of HMDS's that Infringe U.S. Patent No. 6,474,159)

24. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

25. TVI is the assignee and the sole holder of all right, title, and interest in and to the '159 patent, including all rights to enforce the '159 patent, and collect past and future damages for infringement.

26. On information and belief, an invention described in and covered by the '159 patent is used or manufactured by the United States without license of TVI or lawful right to use or manufacture the same.

27. TVI is damaged by the unauthorized use or manufacture by the United States described above and, pursuant to 28 U.S.C. § 1498, is entitled to recover its reasonable and entire compensation from the United States.

## COUNT II
(Lockheed Martin Use or Manufacture of HMDS's that Infringe
U.S. Patent No. 6,474,159 for, and with the Authorization and Consent of, the Government)

28. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

29. On information and belief, an invention described in and covered by the '159 patent is used or manufactured by Lockheed Martin for the Government with the authorization or consent of the Government, but without license of TVI or lawful right to use or manufacture the same.

30. On information and belief, the Government has entered into certain contracts with Lockheed Martin pursuant to which Lockheed Martin uses or manufactures the invention described in and covered by the '159 patent for the Government, with the authorization or consent of the Government for that use or manufacture.

31. TVI is damaged by that use or manufacture described above and, pursuant to 28 U.S.C. § 1498, is entitled to recover its reasonable and entire compensation from the Government.

## **PRAYER FOR RELIEF**

WHEREFORE, TVI prays that there be judgment in favor of TVI, and against the Government, providing the following remedies to TVI:

A. Entry of judgment that the United States, and Lockheed Martin for and with the authorization or consent of the Government, have used and manufactured the invention described in and covered by U.S. Patent No. 6,474,159 without license or lawful right within the meaning of 28 U.S.C. § 1498, such that TVI is entitled to the recovery of its reasonable and entire compensation for such use and manufacture;

B. Entry of judgment for the reasonable and entire compensation in an amount to be determined at trial, plus interest and costs;

C. Such other relief as the Court may deem appropriate.

Date: June 16, 2014                    Respectfully submitted,

*Anthony W. Shaw*
ANTHONY W. SHAW   (BY PERMISSION)
Attorney of Record

ARENT FOX LLP
1717 K Street, NW
Washington, D.C.  20036-5342
Phone: (202) 857-6227
Fax: (202) 857-6395
anthony.shaw@arentfox.com

OF COUNSEL:

Craig S. King
Kevin R. Pinkney
Taniel E. Anderson

ARENT FOX LLP
1717 K Street, NW
Washington, D.C.  20036-5342
Phone: (202) 857-6000
Fax: (202) 857-6395

Attorneys for Plaintiff
Thales Visionix, Inc.